IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIELLE EVERETT SMITH,<br><br>      Plaintiff,<br>v.<br><br>WILMINGTON SAVINGS FUND SOCIETY BANK, FSB d/b/a CHRISTIAN TRUST; and RUSHMORE LOAN MANAGEMENT SERVICES, LLC;<br><br>      Defendants. | Case No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff DANIELLE EVERETT SMITH, through undersigned counsel, brings this complaint against Defendants WILMINGTON SAVINGS FUND SOCIETY BANK, FSB d/b/a CHRISTIAN TRUST ("Wilmington") and RUSHMORE LOAN MANAGEMENT SERVICES, LLC ("Rushmore"), and alleges as follows:

### NATURE OF THE CASE

1. Plaintiff sought to enter into a forbearance agreement with Defendants to address outstanding payment defaults on her home mortgage. Defendants accepted her request and sent Plaintiff a forbearance agreement, which she executed and performed on. But Defendants ignored the agreement and filed a foreclosure action against Plaintiff anyway. At the same time, Defendants refused to accept payments from the Illinois Hardest Hit Fund—payment that were tendered to Defendants for the purpose of reinstating Plaintiff's mortgage.

2. Plaintiff now brings claims against Defendants under the Real Estate Settlement Procedures Act ("RESPA") and the Illinois Consumer Fraud Act ("ICFA") for Defendants' misconduct in handling Plaintiff's forbearance and reinstatement. Plaintiff also brings a breach

1

of contract claim for Defendants' failure to honor the forbearance agreement they entered into with Plaintiff.

## PARTIES

3. Plaintiff is a natural person who resides at 1144 Lyman Ave., Oak Park, IL 60304 (the "subject property").

4. Plaintiff purchased the subject property as her primary family residence.

5. Wilmington is a federal savings bank with its principal place of business in Wilmington, Delaware.

6. Willington conducts its banking business all across the United States, including in this District.

7. Rushmore is a Delaware limited liability company with its principal place of business in Irvine, California.

8. Rushmore conducts its loan servicing business all across the United States, including in this District.

## FACTS SUPPORTING CAUSES OF ACTION

9. On or about November 21, 2007, Plaintiff and Chase Bank USA, N.A. ("Chase") entered into a mortgage for real property owned by Plaintiff commonly known as 3611 Jackson Street, Bellwood, IL, 60104 (the "subject property") to secure Plaintiff's repayment obligations under a note of that same date (the "subject mortgage").

10. At all relevant times, Plaintiff occupied the subject property as her primary residence.

11. Wilmington is the assignee of the subject mortgage. Upon information and belief Wilmington was at all relevant times the holder of the underlying indebtedness.

12. At all relevant times, the subject mortgage was serviced for Wilmington by Rushmore.

13. Rushmore is Wilmington's agent. Rushmore's actions set forth in this complaint all occurred within the scope of the servicing agency relationship between Rushmore and Wilmington.

14. In February and early March 2017, Plaintiff contacted Rushmore to inquire about the amount necessary to reinstate subject mortgage and to arrange making the payments necessary to reinstate it.

15. At that time, Plaintiff was informed by agents of Rushmore that a substantial amount of foreclosure attorneys' fees would be included in the reinstatement amount.

16. Plaintiff disputed the amount of foreclosure attorneys' fees as no foreclosure action had been filed.

17. On or about March 21, 2017, Rushmore, on behalf of Wilmington, sent Plaintiff a letter in which it offered a repayment plan to cure the alleged default (the "Repayment Plan Agreement").

18. In the Repayment Plan Agreement, Rushmore stated: "[a]fter careful consideration of your request, Rushmore is offering the following Plan to you in order to avoid the commencement of a foreclosure action or temporarily suspend a foreclosure action that has already commenced."

19. In the Repayment Plan Agreement, Rushmore stated that total amount due as of March 21, 2017 was $18,562.03. That amount included $4,072.00 in foreclosure fees and costs. The Repayment Plan provided for the amount then due to be repaid through a series of installment payments. The first installment payment of $8,000 was due on March 31, 2017.

20. A copy of the Repayment Plan Agreement was signed on March 20, 2017 by an authorized agent of Rushmore. Rushmore sent Plaintiff a signed copy of the Repayment Plan Agreement on or about March 21, 2017.

21. The Repayment Plan Agreement provided that it had to be signed by Plaintiff and returned to Rushmore by March 31, 2017.

22. Although she disputed that the inclusion of $4,072.00 in foreclosure fees and costs, Plaintiff accepted the offer from Rushmore and Wilmington contained in the Repayment Plan Agreement.

23. Plaintiff signed the Repayment Plan Agreement on March 22, 2017 and returned it to Rushmore prior to March 31, 2017.

24. Despite this agreement, however, Rushmore and Wilmington still referred the matter to foreclosure, and Wilmington filed a foreclosure action on the subject mortgage against Plaintiff on March 22, 2017 (the "foreclosure action"). This was the day after Rushmore and Wilmington sent Plaintiff the Repayment Plan Agreement and nine days prior to the date that Plaintiff was required to have returned an executed copy of the Repayment Plan Agreement to Rushmore and to have made the first payment.

25. Plaintiff made the first installment payment of $8,000 on March 27, 2017 prior to being served with the summons and complaint in the foreclosure action.

26. Plaintiff also applied for assistance through the Illinois Hardest Hit Fund program around this time. The Illinois Hardest Hit Fund program provides mortgage assistance to homeowners who have experienced certain financial setbacks and meet certain eligibility criteria.

27. The Illinois Housing Development Authority approved Plaintiff to receive, at a minimum, payment of the amount necessary to reinstate her loan, as well as possible assistance with future mortgage payments once the loan is reinstated.

28. However, Rushmore and Wilmington refused to accept the reinstatement payments.

29. As a direct and proximate result of Defendants' misconduct, Plaintiff's indebtedness on the subject mortgage increased, including increases related to Defendants' attorneys' fees, interest, and other charges that Defendants added to the indebtedness due on the subject mortgage.

30. As a direct and proximate result of Defendants' misconduct, Plaintiff paid thousands of dollars in exchange for a forbearance, but never received the forbearance.

31. As a direct and proximate result of Defendants' misconduct, Plaintiff was prevented from using funding that she was granted by the Illinois Hardest Hit Fund.

32. As a direct and proximate result of Defendants' misconduct, Plaintiff suffered emotional distress and feared losing her home.

## COUNT I – VIOLATIONS OF RESPA
### (AGAINST ALL DEFENDANTS)

33. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

34. The subject property is a dwelling for the occupancy of four or fewer families.

35. The subject mortgage is a "federally related mortgage loan" under RESPA and 12 C.F.R. § 1024.2.

36. Rushmore is and has been the "servicer" of the subject loan under RESPA § 2605(i)(2) and 12 C.F.R. § 1024.2 at all times relevant to this complaint.

37. Plaintiff's request for reinstatement was a loss mitigation application as contemplated by Regulation X, 12 C.F.R. § 1024.41, et seq.

38. Rushmore granted Plaintiff's request for loss mitigation and agreed to the Repayment Plan Agreement.

39. 12 C.F.R. § 1024.41(f) prohibits servicers from referring a mortgage loan for foreclosure proceedings where the borrower has completed a loss mitigation application, and has not defaulted on a loss mitigation agreement.

40. Rushmore violated 12 C.F.R. § 1024.41(f) by referring the subject mortgage for foreclosure while Plaintiff was counter-signing and performing under the Repayment Plan Agreement.

41. RESPA Section 2605(k)(1)(E) states, in relevant part that "[a] servicer of a federally related mortgage shall not . . . fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

42. By violating 12 C.F.R. § 1024.41(f), Rushmore also violated Section (k)(1)(E) of RESPA.

43. Wilmington is vicariously liable for the actions of its agent, Rushmore.

44. Plaintiff suffered damages as a result of the above-described misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

  A. Grant judgment in Plaintiff's favor against Defendants;

  B. Award Plaintiff actual and additional damages pursuant to Section 2605(f) of RESPA;

  C. Award Plaintiff reasonable attorneys' fees and costs pursuant to Section 2605(f) of RESPA; and

  D. Award any other relief this Honorable Court deems equitable and just.

## COUNT II – BREACH OF CONTRACT – REPAYMENT PLAN AGREEMENT
### (AGAINST ALL DEFENDANTS)

45. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

46. At all relevant times, the Repayment Plan Agreement was a valid, binding, and enforceable contract.

47. Plaintiff complied with all of her obligations under the Repayment Plan Agreement.

48. The Repayment Plan Agreement required that Defendants forbear from commencing any foreclosure action if Plaintiff accepted the Repayment Plan Agreement.

49. Plaintiff accepted the offer contained in the Repayment Plan Agreement. Plaintiff signed the Repayment Plan Agreement and returned it to Rushmore prior to March 31, 2017.

50. Plaintiff performed her obligations under the Repayment Plan Agreement including, but not limited to, paying the first installment of $8000 prior to her being served with the summons and complaint in the foreclosure action and learning that Rushmore and Wilmington had failed to forbear from commencing a foreclosure action against her as they were obligated to do pursuant to the Repayment Plan Agreement.

51. Plaintiff also paid the second installment of $3,449.26 in April 2017.

52. Defendants failed to perform their obligations under the Repayment Plan Agreement by commencing the foreclosure action on March 22, 2017.

53. Plaintiff suffered damages as a result of the above-described misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

    A. Grant judgment in Plaintiff's favor against Defendants;

    B. Award Plaintiff actual and additional damages in an amount to be determined at trial;

   C. Award Plaintiff reasonable attorneys' fees and costs pursuant to Section 2605(f) of RESPA; and

   D. Award any other relief this Honorable Court deems equitable and just.

**COUNT III – VIOLATIONS OF ICFA**
**(AGAINST ALL DEFENDANTS)**

54. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

55. Plaintiff is a "consumer" and "person" as defined under Sections 1(c) and (e) of ICFA.

56. Defendants are each a "person" as defined under Section 1(e) of ICFA.

57. Section 2 of ICFA prohibits unfair or deceptive acts or practices and states, in relevant part, as follows:

> **Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.**

58. Defendants violated Section 2 of ICFA by engaging in unfair acts in the course of conduct involving trade or commerce when dealing with Plaintiff.

59. Defendants' acts of sending Plaintiff the Repayment Plan Agreement in which Defendants promised not to commence foreclosure proceeding if she agreed to its terms and, then, commencing a foreclosure proceeding the following day constitutes an unfair act within the meaning of ICFA.

60. Defendants' acts of sending Plaintiff the Repayment Plan Agreement in which Defendants promised not to commence foreclosure proceeding if she agreed to its terms and,

then, commencing a foreclosure proceeding the following day constitutes a deceptive act within the meaning of ICFA.

61. Defendants intended that Plaintiff rely on these unfair and deceptive acts.

62. Plaintiff was misled, deceived, and damaged by Defendants' acts of sending Plaintiff the Repayment Plan Agreement in which they promised not to commence foreclosure proceeding if she agreed to its terms and, then, commencing a foreclosure proceeding the following day.

63. Plaintiff paid $11,449 to Defendants in reliance on Defendants' promise to forbear from commencing foreclosure proceedings.

64. Defendants' refusal to accept the funds offered by the Hardest Hit Fund program on behalf of Plaintiff to reinstate her mortgage also constitutes an unfair act within the meaning of ICFA.

65. Defendants' actions in misleading, deceiving, and damaging Plaintiff by sending Plaintiff the Repayment Plan Agreement in which they promised not to commence foreclosure proceeding if she agreed to its terms and, then, commencing a foreclosure proceeding the following day were willful, wanton, and malicious and warrant the imposition of punitive damages.

66. Plaintiff suffered damages as a result of the above-described misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

    A.    Grant judgment in Plaintiff's favor against Defendants;

    B.    Award Plaintiff actual and punitive damages in an amount to be determined at trial for the underlying ICFA violations;

    C.    Award Plaintiff reasonable attorneys' fees and costs pursuant to Section 10a(c) of ICFA; and

    D.    Award any other relief this Honorable Court deems equitable and just.

**Plaintiff Demands Trial by Jury.**

                                          Respectfully Submitted,

                                          /s/ *Daniel Brown*
                                          Daniel Brown (ARDC # 6299184)
                                          Main Street Attorney, LLC
                                          PO Box 247
                                          Chicago, IL 60690
                                          (773) 453-7410
                                          daniel@mainstreetattorney.com

                                          *Attorney for Plaintiff*

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

                                                                By: /s/ *Daniel Brown*
                                                                     Daniel Brown

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                                               By: /s/ *Daniel Brown*
                                                                 Daniel Brown